Wright, J.,
delivered the opinion of the Court.
This is an action for an alleged breach of warranty in the sale of two slaves — Caroline and Clarissa — made by the defendant to the plaintiff, on the 21st of August, 1856, and judgment being against the plaintiff, he has appealed in error to this Court. He avers, that at the time of the sale and warranty, both of said slaves were unsound — the former in body, and the latter in both body and mind.
At the trial in the Circuit Court, certain portions of the depositions of Sarah Hitchcock, Washington Hitchcock, Washington Wood, William Davis, and S. H. Whitmore were, upon objection by the defendant, excluded by the Circuit Judge from the consideration of the jury. In this it is insisted *481 there is error, and whether this be so or not, is the only matter for our examination.
Sarah Hitchcock saw Caroline at the plaintiff’s house, and in answer to the third interrogatory, states: “When I first saw the negro woman, by examination I found her to be very much diseased; I found her very much prostrated ; I laid my hand upon her abdomen, she shrunk from the pressure or from great pain, and instantly coughed up a profuse quantity of matter; her bowels were considerably swollen and very sore, •and her bloodvessels were considerably distended and unnaturally full.”
The expressions — “ I found her to be very much diseased,” and, “ or from great pain,” were excluded; upon the ground, it is said, they were the ¡mere opinions of the witnesses, and not a statement of facts. It is shown that this witness had opportunity and capacity For observing the condition of this slave beyond mest mon-professional persons. In Gibson v. Gibson, 9 Yer., 329, -a case involving the sanity of a testator in the execution of his will, this Court lays down the following rules: “ Attesting witnesses, and they only, are trusted to give their opinion merely, and without cause or reason assigned, of testator’s sanity. ¡Physicians may state their opinion of the soundness of the testator’s mind, but they must state the circumstances or symptoms from which they draw their conclusions. As to all others, their opinions, considered merely as opinions, are not evidence. But having stated the/, appearance, conduct, or conversation of the testator, or other particular fact, from which his state of mind may he inferred, they are at liberty to state their inference, conclusion, or •opinion, as the result of those facts. The propriety of doing ' this, say the Court, arises from the delicate nature of all investigations into the state of the human mind. How can a witness describe the dissociated and flighty conversation of a lunatic, the fear, the horror, the phrenzy of his eye, how communicate the influences which mind practices upon mind, if 1 he must not speak of inferences, impressions, or conclusions ? ’ But that, after all, it is the facts which a witness details, the *482 conduct which he describes, which chiefly and primarily constitute the testimony to be relied on.”
The reason for the admission of the opinions of witnesses founded upon observation and knowledge, as applied to a variety of transactions in the affairs of human life, was given by Judge Gaston, in the able opinion of the Court, in Clary v. Clary, 2 Ird., 78, a case involving the capacity of the donor to make a deed of gift. The witness there, in that part of his deposition which was rejected by the Superior Court, stated, “ that he was impressed with the belief that, as to her mental faculties, Mary Clary was in the state called childish.” The substance of the entire deposition was, that the witness had no acquaintance with Mary Clary, (the donor,) other than such as resulted from one occurrence; that eleven years before the execution of the deed in dispute, he visited her at Daniel Clary’s house, in consequence of a message from said Daniel, and for the purpose of writing her will; that he received her directions with respect to the disposition of her property, and wrote the will according to these directions; that he did not attest the will, but left it to be attested by othersthat at this time she appeared to him to be in good health, but he thought her intellect in the state usually termed childish. The objection to the rejected part of the deposition was, for that it gives the opinion of the witness upon the state of Mary Clary’s mind. The judgment of the Superior Court of Larv rejecting this evidence, was reversed, the Court holding, that whatever might be the weighs of the rejected testimony, the plaintiffs had a right to insist on its being plaeed in the scales of evidence. Mere opinion, say the Court, as Jsuch, is not admissible.'~KBut judgment founded on actual obt / servation of the capacity, disposition, temper, character, pecu- ' liarities of habit, form, features, or handwriting of others, is > more than mere opinion. It approaches to knowledge, and is >knowledge, so far as the imperfection of human nature will ' permit knowledge of these things to be acquired, and the ’’result thus acquired should be communicated to the jury, because they have not had the opportunities of personal obser *483 vation, and because in no other way can they effectually have tthe benefit of the knowledge gained by the observations of -others. The cases of McKee, v. Nelson, 4 Cowen, 355, and Morse v. The State, 6 Cow., 9, went upon the same ground. The former was an action for a breach of marriage promise, and it was held, that a witness might be asked his opinion, whether living with the plaintiff, and from an observance of her deportment, &c., he is of opinion that the plaintiff was sincerely attached to the defendant. The latter involved the question, whether a student of Yale College was under the age of 21 years; and it was held, that had the witnesses testified to the facts indicative of the student’s age, and accompanied them with their belief, or opinion, the testimony would have been competent. The proof is admissible in a certain class of cases, because it is impossible, says Judge Gaston, for the witness to specify and detail to the jury all the minute circumstances by which his own judgment was determined, so as to enable them, by inference from these, to form their judgment thereon.
We do not perceive why these principles are not applicable to a case involving physical as well as mental unsoundness ; and so we understand the authorities. 1 Greenl. Ev., sec. 440; 11 Hum., 268.
Testing the case by these authorities, we think the witness,. Sarah Hitchcock, from the facts detailed by her, was qualified to give her opinion, and might state that she found the slave very much diseased, and that when she laid her hands upon her she gave way, either from the pressure, or from great pain. Indeed the testimony of this witness can. scarcely be regarded as that of a non-professional person. She was. called by the plaintiff to attend this slave as a physician, and examined her in that capacity, and charged for her services- as-do other physicians. She had attended to diseases peculiar to 'females for the last twenty-six years, and had an active experience in such diseases for that length of time, aided by reading, and by intercourse with the best physicians, and was then *484 actually practicing as a physician. She not only states the circumstances, or symptoms, contained in her answer to the interrogatory above named, but details other facts tending to show the diseased condition of the slave.
Upon the same authority, it seems to me, there was error in rejecting those parts of the deposition of Washington Hitchcock, wherein, speaking of the slave Clarissa, he says : “ She was, at the time I first saw her, and is now, almost, if not quite an idiot;” also, the words, “ and seems not to understand what is said to herand also, “ she seems to have no care of herself, or sense of protection.”
This witness was the plaintiff’s overseer in the fall of 1856, had charge of his slaves; and the entire sentence of the deposition from which the above extracts are taken, is as fol- : “ She was, at the time I first saw her, and is now, almost, if not quite an idiot. When she is spoken to, she stands still, and seems not to understand what is said to her. If she is ordered to do anything, if she goes at all, she is apt to do anything else as that which she was bid to do. She seems to have no care of herself, or sense of protection. She sleeps a great deal, and it seems would sleep always if she was not roused up.” Now here the opinion of the witness is accompanied with the conduct of the slave.
But as to the other parts of the depositions of these two witnesses which were rejected, as well as the rejected proof of the other witnesses, we are not able to see that there was any error, either because it was but mere opinion, unaccompanied with the facts, or upon other grounds, was inadmissible. It is often a difficult matter, in this class of cases, to determine what is, or is not, legal evidence. We have felt the embarrassment of the subject in this cause.
It may be that the rejection of the evidence which we now consider admissible and material, resulted in no injury to the plaintiff; but as we cannot see what effect it might have produced if allowed to go to the jury, we are constrained to reverse the judgment, and remand the cause for a new trial. We do so with less reluctance, because, from reading the *485 entire proof, we tbink, as to the slave Caroline, the weight of it is, that she was unsound at the time of the sale and warranty.
Judgment reversed.